# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN FREELAND & ROBYN FREELAND </br></br> Plaintiffs, </br></br> v. </br></br> AMERISTEP, INC., and PRIMAL VANTAGE CO., INC., </br></br> Defendants. | Case No. 13-cv-08-JHP |

## OPINION AND ORDER

Before the Court are Defendants Ameristep, Inc. and Primal Vantage Co., Inc.'s Motion for Summary Judgment [Doc. No. 37]; Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment [Doc. No. 43]; and Defendants' Reply to Plaintiffs' Response [Doc. No. 73]. Also before the Court are Defendants' Motion in Limine [Doc. No. 45] and Plaintiff's Response in opposition [Doc. No. 87]. After consideration of the briefs, and for the reasons detailed below, Defendants' Motion for Summary Judgment [Doc. No. 37] and Defendants' Motion in Limine [Doc. No. 45] are **GRANTED**.

## BACKGROUND

### A. Procedural History

Plaintiffs commenced the instant action on November 26, 2012, seeking to recover damages stemming from an accident that occurred on September 27, 2011, which involved hunting equipment manufactured by Defendants. Plaintiffs assert claims against Defendants for (1) strict manufacturer's products liability based on design defect, manufacturing defect, and inadequate warning; and (2) negligence based on failure to exercise due care in designing and manufacturing certain hunting equipment and warning of potential dangers associated with the use of the hunting equipment. On February 27, 2014, Defendants filed a Motion for Summary

Judgment seeking summary adjudication on all claims asserted by Plaintiffs. [Doc. No. 37]. Defendants also filed Motion in Limine seeking to exclude the testimony of Plaintiffs' expert, Mr. Charles Powell. [Doc. No. 45].

## B. Factual Background

Plaintiff Brian Freeland purchased two 2008 model ratchet straps ("2008 Ratchet Straps") from Wal-Mart in Atoka, Oklahoma. The 2008 Ratchet Straps were used to secure a treestand from which Mr. Freeland hunted. On September 27, 2011, after attaching his treestand to a tree using the 2008 Ratchet Straps, Mr. Freeland was injured when one of the 2008 Ratchet Straps broke, allowing Mr. Freeland to fall. It is undisputed that Mr. Freeland was not wearing a safety harness at the time he was injured. It is also undisputed that Mr. Freeland did not read the warnings provided with the 2008 Ratchet Straps and had not read the warnings provided with any hunting equipment for nearly twenty (20) years.

## DISCUSSION

## I. Defendants' Motion in Limine

Before the Court can address whether Plaintiffs have produced evidence sufficient to survive Defendants' Motion for Summary Judgment, it must first rule on Defendants' motion to exclude the testimony of Mr. Powell. [Doc. Nos. 45]. The 2000 amendment to Federal Rule of Evidence 702 codified the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1995), and provided the standard for admissibility of expert opinion testimony: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Carver v. Kia Motors Corp.*, 10-CV-642-JHP-PJC, 2012 WL 119587 (N.D. Okla. Jan. 12, 2012) (citing Fed. R. Evid. 702).

In determining the admissibility of expert testimony the Court must initially determine whether the proffered expert is qualified to offer an opinion on the pertinent issues of the case. *Ralston v. Smith & Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). A qualified expert possesses the necessary knowledge, skill, experience, training, or education relevant to the facts at issue. *Id.* The Court must then conduct a two-pronged inquiry as to the reliability and relevance of the proffered testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). It is now well established that Fed. R. Evid. 702 imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts. *Id.* at 592–93. The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592).

To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." 509 U.S. at 590. In other words, "an inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation—i.e. 'good grounds,' based on what is known." *Id.* "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, a plaintiff must show that the method employed by the expert in

3

reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. *Id.*

To assist in the assessment of reliability, the Supreme Court has listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Daubert*, 509 U.S. at 593–94. As noted, the list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Kuhmo Tire*, 526 U.S. at 150. ("[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* ... Too much depends upon the particular circumstances of the particular case at issue.").

Generally, courts should focus on an expert's methodology rather than the conclusions it generates. *Daubert*, 509 U.S. at 595. However, an expert's conclusions are not immune from scrutiny: "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert."). Under *Daubert*, "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell*, 165 F.3d at 782 (quoting *In re Paoli RR. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994). It is critical that the district court determine "whether the evidence is genuinely scientific, as distinct from being unscientific speculation

offered by a genuine scientist." *Id.* at 783 (quoting *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Khumo Tire*, 526 U.S. at 152.

The Court has carefully considered Mr. Powell's credentials, expert report, and deposition testimony. At the outset, the Court finds that Mr. Powell expertise with regard to design of ratchet straps manufactured using polymer polypropylene webbing insufficient to qualify him as an expert on the design and manufacture of the 2008 Ratchet Straps. Although Mr. Powell is an accomplished engineer, his expertise appears to be strongly concentrated in the area of metallurgy. Significantly, Mr. Powell has very limited experience with UV inhibitors to polymer materials—the very materials that are the subject of this case. [Doc. No. 73, Ex. 3 at 44]. As such, the Court finds that Mr. Powell's general engineering knowledge is insufficient to qualify him as an expert with regard to the 2008 Ratchet Straps at issue in this case. *See Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) ("Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease."); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 987 (5th Cir. 1997); *Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir. 1999) (affirming the district court's refusal to qualify a witness as an expert where the witnesses expertise "was no greater than that of any other individual with a general scientific background"). Therefore, the Court finds that Mr. Powell is not qualified to opine as to the design and manufacture of the 2008 Ratchet Straps.

The Court also finds that Mr. Powell's testimony must be excluded for failing to satisfy the reliability requirements mandated by *Daubert* and its progeny. Mr. Powell opined that the 2008 Ratchet Straps were defective because they lacked a UV additive, explaining that the webbing for the 2008 Ratchet Straps "should contain antioxidants and be UV stabilized for typical weather exposure for a tree stand for 5 to 10 years." [Doc. No. 44, Ex. 4 at 5, ¶ 6.6]. In reaching this opinion, Mr. Powell conducted a FTIR analysis, the results of which identified webbing material in the 2008 Ratchet Straps "as the polymer polypropylene." [*Id.* at ¶ 6.4]. However, Mr. Powell's expert report plainly states, "[The FTIR] analysis ***can only identify the base polymer*** and ***not any additives such as antioxidants or UV light inhibitors*** that could be added to the base polymer to protect the [polymer polypropylene] from exposure degradation and weakening that PP is susceptible to." [*Id.* (emphasis added)].[1] Furthermore, Mr. Powell's report explains that "[t]he design drawing and documents produced to date by [Defendants] are inadequate to determine if the [2008 Ratchet Straps] contain design defects as well as manufacturing defects. No documents identifying the specific polymer chemistry for the webbing has been produced." [*Id.* at ¶ 6.6]. Without more, there is simply no basis for Mr. Powell's conclusion that the 2008 Ratchet Straps failed to contain a UV additive. Furthermore, Mr. Powell admits that he cannot determine whether the design of the 2008 Ratchet Straps was defective because he did not review the design specifications in order to determine if the 2008 Ratchet Straps were manufactured according to the products intended specifications or were simply aberrant units. Consequently, the Court is left to wonder how Mr. Powell could logically conclude that the ratchet straps contained no UV additives, either by design or as the result of a manufacturing defect. Without knowing whether the ratchet straps contained UV additives, Mr.

---

[1] In their brief, Plaintiffs' misrepresent Mr. Powell's report as follows: "Mr. Powell in his report states that he conducted a FTIR analysis and determined that the Subject Straps did not contain any antioxidants or UV light inhibitors within the polypropylene webbing … ." [Doc. No. 87, 4].

Powell's opinion that the ratchet straps were defective due to the absence of UV additives cannot be supported.

The Court also finds that Mr. Powell's did not offer an opinion regarding the specific cause of the 2008 Ratchet Straps failure. Instead, Mr. Powell's report merely states that exposure to the elements, or weathering, caused the 2008 Ratchet Straps to degrade. [*Id.* at ¶¶ 6.1, 6.7]. Given Mr. Powell's opinion that the 2008 Ratchet Straps were defective due the Defendants' failure to incorporate a UV additive into their design, the relevant inquiry is whether the UV additive would have prevented Mr. Freeland's injuries. Mr. Powell testified that he did not do any tests on the 2008 Ratchet Straps or any exemplar ratchet straps to determine the amount of degradation and resulting tinsel strength reduction caused by exposure to the elements. [Doc. No. 73, Ex. 3 at p. 22-3]. Mr. Powell also testified that he did not identify what element (i.e., sunlight, wind, rain, extreme temperatures) caused the breakdown of the ratchet straps. [*Id.* at 24-5]. Furthermore, Mr. Powell did not attempt to quantify how much longer the ratchet straps would have lasted if Defendants incorporated a UV additive into the polymer webbing used to manufacture the ratchet straps. [*Id.* at 25]. Consequently, Mr. Powell's opinion that the ratchet straps were defective because they failed to contain UV additives does not satisfy the requirements of *Daubert*, and Defendants' Motion in Limine [Doc. No. 45] must be **GRANTED**.

## II. Defendants' Motion for Summary Judgment

As a general rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such

that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

**A. Strict Manufacturer's Product Liability—Design Defect Claim**

Plaintiffs assert a manufacturer's products liability claim in strict tort based on Defendants' failure to incorporate include UV additives into the polypropylene webbing used to manufacture the 2008 Ratchet Straps. The Oklahoma Supreme Court set forth three factors that a plaintiff must prove in order to establish a viable products liability claim.

> *First* of all, Plaintiffs must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough.
>
> *Secondly,* Plaintiffs must prove that the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer's possession and control. If the action is against the retailer or supplier of the article, then the Plaintiffs must prove that the article was defective at the time of sale for public use or consumption or at the time it left the retailer's possession and control.
>
> *Thirdly,* Plaintiffs must prove that the defect made the article unreasonably dangerous to Mr. Freeland or to his property as the term "unreasonably dangerous" is defined below.

*Kirkland v. General Motors Corp.*, 521 P.2d 1359, 1363 (Okla. 1974) (internal citation omitted). "Unreasonably dangerous" is defined as "'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common

to the community as to its characteristics.'" *Id.* at 1362–63 *(quoting* Restatement (Second) of Torts § 402A).

Plaintiffs contend that a design and/or manufacturing defect caused the 2008 Ratchet Straps on Mr. Freeland's treestand to break, leading to his injury. Specifically, Plaintiffs asserts that "the design of Defendants' replacement straps was defective because these straps lacked UV additives, which would allow these straps to be used outdoors for several weeks … ." [Doc. No. 43]. As outlined above, Plaintiffs submitted no evidence from which one could infer that the 2008 Ratchet Straps lacked UV additives. Logically, if Plaintiffs cannot establish that the 2008 Ratchet Straps did not have UV additives, then it follows that Plaintiffs cannot establish that the 2008 Ratchet Straps are defective based on Defendants failure to incorporate UV additives into the polymer webbing of the 2008 Ratchet Straps. Consequently, the Court finds that Plaintiffs have failed to present evidence sufficient establish that the 2008 Ratchet Straps were defective.

Even if the Court were to find that Plaintiffs were able to establish a defect, Plaintiffs still fail to show that the purported defect caused Mr. Freeland's injuries. In order to defeat summary judgment, Plaintiffs must offer evidence of probable causation in order to create a question of material fact that can be presented to a jury. *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 191, 191 (1992) ("[T]he mere possibility that a defect caused the injury is not sufficient."). While circumstantial evidence may be used to support the probability of a defect, the totality of the evidence must be sufficient to allow the jury to focus on *probabilities*, rather than speculating about *possibilities*. *Chickasha Cotton Oil Co. v. Hancock*, 306 P.2d 330 (Okla. 1957); *Sadler v. T. J. Hughes Lumber Co., Inc.*, 537 P.2d 454 (Okla. Civ. App. 1975). Furthermore, it is well-established that if a plaintiff's injury would have occurred even with the alternative design, then a defendant's failure to adopt the alternative design cannot be said to have caused the injury.

9

*Marshall v. Ford Motor Co.*, 446 F.2d 712 (10th Cir. 1971); *Marker v. Universal Oil Products Co.*, 250 F.2d 603 (10th Cir. 1957) (holding that the plaintiff did not meet her burden on causation because there was no proof that the decedent would have survived had the alternative design feature been installed). *See also Wicker v. Ford Motor Co.*, 393 F. Supp. 2d 1229 (W.D. Okla. 2005).

The Court finds that Plaintiffs have failed to present evidence sufficient to demonstrate that Defendants' alleged failure to incorporate a UV additive into the polymer webbing of the 2008 Ratchet Straps caused Mr. Freeland's injuries. As explained above, Plaintiffs have no evidence to establish that the 2008 Ratchet Straps were damaged by exposure to sunlight. Under the circumstances presented, it is entirely possible that some other element caused the 2008 Ratchet Straps to degrade. Without more, Plaintiffs cannot demonstrate that the inclusion of the UV additive in the polymer webbing of the 2008 Ratchet Straps would have prevented Mr. Freeland's injury. As such, the Court finds that Plaintiffs have failed to present evidence sufficient to establish that the purported defect in the 2008 Ratchet Straps caused their injuries. Accordingly, summary judgment in favor of Defendants on Plaintiffs' manufacturer's products liability claims is appropriate.

**2. Negligence—Design and Manufacture**

Plaintiffs also seek to recovery under a theory of negligent design and manufacture, asserting that Defendants failed to exercise due care in the design and manufacture of the 2008 Ratchet Straps. In order to prevail on their negligence claim, Plaintiffs must show that Defendants owed them a legal duty, defendant breached that duty, and such breach was the direct and proximate cause of Plaintiff's injuries. *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997).

The threshold question for a negligence claim is whether the defendant owed a duty to the plaintiff. *Wofford v. E. State Hosp.*, 795 P.2d 516, 518 (Okla. 1990). Whether a duty is owed is a question of law for the court. *Id.* at 519. It is fundamental that every person or entity must use ordinary care to avoid a foreseeable risk of injury to other persons. *See Iglehart v. Bd. of County Comm'rs of Rogers County*, 60 P.3d 497, 502–03 (Okla. 2002). The contours of this duty, however, depend on the relationship of the parties and the facts and circumstances of a particular case. *See Wofford*, 795 P.2d at 519. The most important consideration in determining whether a defendant owes a duty of care is the foreseeability of harm to the plaintiff. *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007). Thus, a manufacturer must exercise ordinary care in the design and manufacture of a product to protect foreseeable users of its products from foreseeable risks of harm. *See generally Royse v. Stine*, 473 P.2d 923, 925 (Okla. 1970) ("Since the defendants designed and built this machine, it was their duty to make it safe for those who were called upon to use it.") (citing *Crane Co. v. Sears*, 35 P.2d 916 (1934)).

Although the Court regards Plaintiffs' products liability and negligent design claims as distinct claims for relief, both claims fail if Plaintiffs fail to establish a defect. Indeed, Defendants cannot be held to have breached the duty to produce a non-defective product if Plaintiffs cannot establish the existence of a defect in the design or manufacture of the 2008 Ratchet Straps. *Romero v. International Harvester Co.*, 979 F.2d 1444 (10th Cir. 1992)) ("[I]n order to establish breach, the plaintiff in a negligence case generally must prove both defect *and* negligence: that is, (1) that the product was *defective* (in its design, manufacture, or marketing), and (2) that the manufacturer was *negligent* in some manner in allowing the product to be manufactured and sold in a defective condition."); *Bradley v. General Motors Corporation*, 116 F.3d 1489 (10th Cir. 1997) (unpublished). As explained above, the Court finds that Plaintiffs

have failed to produce evidence sufficient to establish the existence of a defect. Therefore, Plaintiffs' negligent design and manufacturing claims must be dismissed.

### 3. Failure to Warn Claims

Plaintiffs also assert failure to warn claims against Defendants based on their alleged failure to provide adequate warnings regarding the hazards of the 2008 Ratchet Straps. Whether Plaintiffs are proceeding under a negligence or manufacturer's products liability theory, the law concerning the adequacy of a product warning is similar. *See Grover v. Superior Welding, Inc.*, 893 P.2d 500 (Okla. 1995); *Berry v. Eckhardt Porsche Audi, Inc.*, 578 P.2d 1195, 1196 (Okla. 1978). A product may be defective due to defective design or manufacture, but a product may also be defective if a manufacturer fails to provide the user adequate warning of inherent dangers from all foreseeable uses of a product. *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020 (Okla. Civ. App. 2004); *Edwards v. Basel Pharmaceuticals*, 933 P.2d 298, 300 (Okla. 1997).

A manufacturer may be liable for selling or manufacturing a defective product if an unclear or inadequate warning fails to inform a user of an inherent or latent defect. *Smith v. United States Gypsum Co.*, 612 P.2d 251, 253–54 (Okla. 1980). However, if the manufacturer provides a warning that covers all foreseeable uses and the product would be safe if the directions were followed, a product is not defective under a failure to warn theory. *Id.* at 253. A manufacturer has no duty to warn users of an obvious danger or risk which an ordinary user would expect from any foreseeable use of a product. *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1334 (10th Cir. 1996); *Duane v. Oklahoma Gas & Elec. Co.*, 833 P.2d 284, 286 (10th Cir. 1992). As the Oklahoma Supreme Court stated in *Duane v. Oklahoma Gas & Electric Co.*,

> [O]nly where the seller has reason to anticipate that danger may result from a particular use, may he be required to give adequate warning of the danger, and a product sold without such warning is in a defective condition.... A duty to warn must also be based upon the foreseeability that the user would use the product in

that way, the type of danger involved, and foreseeability of the user's knowledge of the danger.

833 P.2d at 286.

In order to prevail, Plaintiffs must also establish that the allegedly defective warning caused their injuries. "The failure to adequately warn of a known potential risk renders a product defective; however, the plaintiff must establish that the failure to warn caused the injury." *Daniel*, 97 F.3d at 1332-33 (internal citations omitted). Under Oklahoma law, it is well established that Plaintiffs are entitled to a rebuttable presumption that Mr. Freeland would have read and heeded an adequate warning.

> Oklahoma recognizes a rebuttable presumption that plaintiff would have read and heeded an adequate warning. Thus, in the absence of evidence rebutting the presumption, a plaintiff need not produce evidence that she would have acted differently if an adequate warning had been given. But once the opposing party meets its burden to come forward with evidence rebutting the presumption, the presumption disappears.

*Id.* at 1332.

The dispositive issue is whether Defendants' alleged failure to warn caused Mr. Freeland's injuries. Based on the evidence presented, the Court finds that Defendants have rebutted the presumption that Mr. Freeland would have read and headed an adequate warning if it had been provided. It is undisputed that Mr. Freeland never read any of the written warnings and instructions for the 2008 Ratchet Straps, or any of the other hunting equipment he has used or purchased in roughly twenty (20) years. Mr. Freeland testified:

> Q When you, when you buy a stand are you the kind of person, strike that -- are you the kind of person that when he buys a product, particularly one that could be involved in a serious injury, if used improperly, are you the type of guy that reads the instructions?
>
> A I haven't read a treestand instruction in 20 years.
>
> Q And why is that?

> A Well, I guess you read one, you've read them all, I guess. It had been long ago last time I read treestand instructions.
>
> Q Approximately was it ten years since you read a treestand instruction?
>
> A No, probably early 90s before school.
>
> Q So, if you purchased a treestand you wouldn't read the warnings and instructions. You would just use it?
>
> A Yes.
>
> Q Based on your prior knowledge?
>
> A Yes.
>
> Q Likewise, if treestands you were purchasing contains safety DVD's or hunting DVD's, did you ever watch those?
>
> A No.
>
> Q If there was a warning label on a treestand or a hunting product, would you actually read that label?
>
> A No.

[Doc. No. 38, Ex. 1 at 42-43]. Furthermore, Plaintiffs point out several alleged deficiencies regarding the language used to warn consumers of the risks associated with use of the 2008 Ratchet Straps, but do not quarrel with the manner in which the warning was conveyed. [Doc. No. 43, 20-21]. Consequently, any presumption that a different warning would have been read and heeded by Mr. Freeland has disappeared and Plaintiffs continue to carry the burden of establishing that the allegedly inadequate warnings cause their injuries. *Daniel*, 97 F.3d at 1333. The Court concludes that that Plaintiffs have failed to present evidence sufficient to allow a jury to conclude that the alleged inadequate warnings caused the injuries at issue. Therefore, Plaintiffs have failed to present evidence to establish the essential element of causation for their failure to warn claims. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' failure to warn claims.

## CONCLUSION

For the reasons outlined above, Defendants' Motion for Summary Judgment [Doc. No. 37] and Defendants' Motion in Limine [Doc. No. 45] are **GRANTED.**

**SO ORDERED** this 24th day of April, 2014.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma